# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HITZ ENTERTAINMENT CORPORATION, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> SHANE MOSLEY, an individual, and GOBOX PROMOTIONS, INC., a Nevada corporation, <br><br> Defendants. | No. 16 C 1199 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

The bout before the Court stems from a bout in a boxing ring. In the Plaintiff's corner is Hitz Entertainment Corporation ("HEC"), an Illinois-based boxing promotion company owned by Bobby Hitz, which is seeking to challenge a former three-weight world champion and former best pound-for-pound fighter in the world, "Sugar" Shane Mosley. Mosley is joined in his corner by his promotion company GoBox Promotions, Inc. ("GoBox"), an independent boxing promotion outfit that Mosley uses as a vehicle for staging and promoting boxing matches. HEC brings two claims under Illinois state law against Mosley and GoBox (collectively, "Defendants"), one for tortious interference with a contract and one for tortious interference with prospective economic relations. Defendants move to dismiss [14] HEC's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

HEC also brings a separate motion for a declaration and order regarding the agreed confidentiality order [35], seeking an order from the Court declaring certain documents improperly designated as confidential and for attorneys' eyes only ("AEO").

Because HEC has failed to present facts establishing sufficient contacts between the Defendants and Illinois to support the exercise of personal jurisdiction over the Defendants in Illinois, the Court grants the motion to dismiss. And because Defendants have not presented a basis for designating the deposition transcripts as confidential and one of the documents the Defendants designated AEO is currently publicly available, the Court grants HEC's motion for a declaration with respect to those documents. However, because the remaining documents contain confidential information and Defendants have demonstrated that good cause exists to designate them AEO, the Court denies the motion with respect to those documents.

## BACKGROUND[1]

### I. The Fight

HEC is an Illinois-based boxing promotion company, solely owned by Bobby Hitz, a former heavyweight boxing contender. In December 2012, HEC entered into a promotional agreement (the "Agreement") with a professional boxer named Dimar Ortuz. Under the Agreement, HEC had exclusive rights to secure and promote all boxing matches for Ortuz during the term of the contract, which would extend for a minimum of three years.

At some point in 2015, Mosley offered Ortuz a bout (the "Bout") against Victor Barragan during an event Mosley and GoBox were promoting in California on August 29, 2015 (the "Event"). At the time Mosley made this offer to Ortuz, Ortuz was living and training in California. Neither Mosley nor GoBox contacted Ortuz while he was in Illinois.

Prior to the Bout, on August 11, 2015, Bobby Hitz contacted Trista Pisani, GoBox's Vice President of Operations, and informed her of HEC's agreement with Ortuz. Pisani told Hitz that

---

[1] The facts in the background section necessary to ruling on Defendants' motions to dismiss pursuant to Rule 12(b)(2) are taken from the Complaint and other documents and affidavits submitted by the parties. The Court draws all reasonable inference in favor of the HEC and resolves all factual disputes in favor of HEC. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003).

2

she would get back to him, but she never did. On August 19, Hitz texted Pisani regarding the Bout and stated that if Defendants went forward with it he would sue them in Illinois. Again, Pisani did not respond. On August 25, Hitz sent a text message to Mosley asking that Mosley call him regarding Ortuz and noting that he has an exclusive promotion contract with Ortuz. Mosley did not respond to this message. The Bout took place, as scheduled, on August 29, 2015.

GoBox entered into several distribution agreements with Pay-per-view ("PPV") distributors to distribute and market the Event nationwide, including in Illinois. Each of the PPV distributors made sales in Illinois and at least one sent nationwide marketing emails that were received by individuals in Illinois. Additionally, GoBox distributed the Event through a closed circuit television ("CCTV") distributor who provided the Bout to venues nationwide, including eight venues in Illinois.

## II.     Confidentiality Designation

As a result of Ortuz participating in the Bout, HEC filed the present suit in January 2016. During discovery, Defendants produced the agreements with the PPV distributors as well as a report on the CCTV distribution. Pursuant to the agreed protective order in this case, Defendants designated those documents as AEO. Subsequently, during the depositions of Mosley and Pisani, HEC's counsel asked Mosley and Pisani about those documents. Defendants did not designate the depositions as confidential, as required by the protective order, during the depositions.

On September 6, 2016, GoBox filed an unrelated complaint in the Central District of California against one of the PPV distributors and attached to that complaint the agreement with that distributor as well as the CCTV report, both of which Defendants previously designated as AEO. In early November 2016, GoBox filed a motion to seal the distributor agreement filed in

that case but did not move to seal the CCTV report. The court in the California case granted the motion, and resealed the agreement, but the CCTV report remains on the publicly available docket in that case.

## LEGAL STANDARD

### I. Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on the motion without a hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83. The Court must consider each defendant's contacts with the state individually. *Id.* at 784.

### II. Protective Order

The Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P.

26(c)(1). But the Court is required to make a good-cause determination before shielding relevant information from public disclosure. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999). The party seeking a protective order must provide specific facts establishing good cause to support the entry of a protective order. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300, 303 (N.D. Ill. 1993). The party seeking to protect documents under a protective order "must continue to show good cause for confidentiality when challenged." *In re: Bank One Sec. Litig. First Chicago S'holder Claims*, 222 F.R.D. 582, 586 (N.D. Ill. 2004). The designating party must show that disclosure will result in a "clearly defined and serious injury," by pointing to "specific demonstrations of fact." *In re: Aqua Dots Prods. Liab. Litig.*, No. 08 CV 2364, 2009 WL 1766776, at *1, 4 (N.D. Ill. June 23, 2009) (citations omitted) (internal quotation marks omitted). The party cannot make this showing through conclusory statements about potential harms. *Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 276 F.R.D. 237, 241 (N.D. Ill. 2011); *Culinary Foods*, 151 F.R.D. at 303. And "[i]f there is any doubt as to whether the material should be sealed, it is resolved in favor of disclosure." *In re: Bank One*, 222 F.R.D. at 586.

## ANALYSIS

### I. Motion to Dismiss

Defendants argue that the Court does not have personal jurisdiction over them. HEC brings two state-law claims against Defendants, one for tortious interference with a contract and one for tortious interference with prospective economic relations. These claims are in federal court under the Court's diversity jurisdiction. A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the constitution and the law of the state in which it sits. *Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994);

Fed. R. Civ. P. 4(e) (federal court sitting in diversity can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Depending on the extent of a defendant's contact with Illinois, personal jurisdiction may be either general or specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). General personal jurisdiction means that a defendant may be subject to suit in Illinois for any cause of action arising in any place. *Id.* Specific personal jurisdiction is more limited and only exposes the defendant to claims that arise out of the defendant's contacts with Illinois. *Id.* In either case, the Court may only exercise jurisdiction if the contacts establishing that jurisdiction are "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). HEC contends that Defendants have sufficient contacts with Illinois to support both specific and general personal jurisdiction. While HEC does not specify in its response which contacts are relevant to establishing each type of jurisdiction, the Court addresses the two types of jurisdiction separately below and evaluates the alleged contacts in the manner it deems most appropriate.

### A. General Personal Jurisdiction

HEC contends that both Mosley and GoBox have sufficient contacts with Illinois to support general personal jurisdiction in Illinois. A defendant is subject to general personal jurisdiction if it has "continuous and systemic general business contacts with the forum state."

*Id.* (quotation marks omitted) (citation omitted). This is a high standard, and it is only met if the Defendant has "such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *Id.* at 426. The Court evaluates Mosley's and GoBox's contacts individually below.

> i. *GoBox's Contacts with Illinois*

HEC's argument that GoBox is subject to general personal jurisdiction in Illinois boils down to essentially one point: GoBox produced the Bout and then contracted with several third parties to market and distribute the Bout nationwide, including in Illinois, and that in doing so it submitted itself to the jurisdiction of Illinois (and presumably every other jurisdiction where the fight was shown). The Court will not recap the details of each distribution agreement here, but suffice it to say that GoBox had distribution agreements with several companies, each of which distributed the Bout, for a fee, to customers in Illinois. HEC alleges that as part of one of these distribution agreements, the distributor sent "blast" emails to people nationwide, some of whom were in Illinois, and aired commercials for the Bout nationwide, including in Illinois. These distribution agreements differed from typical boxing match distribution agreements in that GoBox maintained ownership of the copyright of the telecast, whereas in a typical arrangement the telecast of a boxing match is produced by a distributor or other third party, who pays the promoter a fixed licensing fee but the distributor owns the copyright for the telecast.

These contacts with Illinois are not sufficient to support general personal jurisdiction. General personal jurisdiction is found where a party has engaged in systemic and continuous activity in the forum state such that it approximates physical presence. *Tamburo*, 601 F.3d at 701. The threshold is high. *Id.* The fact that GoBox contracted with a number of distributors

who distributed and marketed the Bout in Illinois does not establish continuous nor systemic activity in the state. Quite the opposite, it demonstrates discrete and limited contact.

HEC bears the burden of establishing personal jurisdiction and in support HEC cites just one case, *Tamburo*, 601 F.3d 693.[2] In *Tamburo*, the court found that blast emails could provide a basis for a court to exercise *specific* personal jurisdiction where the blast emails were the means through which the defendant committed the alleged tort. *Id.* at 704–09. However, the court also found that blast emails are not sufficient to support the exercise of *general* personal jurisdiction because they are too "sporadic" to "approach the level of continuous and systematic contacts necessary to establish general personal jurisdiction." *Id.* at 701–02 (citations omitted) (internal quotation marks omitted). HEC cites no other case law that supports a finding that this Court has general personal jurisdiction over GoBox. Therefore, HEC has failed to carry its burden and the Court finds GoBox is not subject to general personal jurisdiction in Illinois.

### ii. *Mosley's Contacts with Illinois*

HEC argues that Mosley's ownership of GoBox alone is sufficient to establish personal jurisdiction over him. Even if GoBox were subject to general personal jurisdiction, the Court could not impute the contacts of GoBox to Mosley. Ownership or affiliation with a corporation is not a sufficient minimum contact to support jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Where the owner-defendant observes corporate formalities, unless there is some basis for piercing the corporate veil, the Court will not impute the contacts of the corporation-defendant to the owner-

---

[2] HEC also includes one additional case cite, to a Florida appellate court, in a footnote in support of its somewhat confusing argument that because Illinois could impose taxes on the revenue that distributors and promoters derive from sales in Illinois, the promoters would be subject to personal jurisdiction for actions related to the collection of those taxes. This is no doubt true, but it is irrelevant here. Such a collection action would be an exercise of specific personal jurisdiction, because the collection action would arise out of sales in Illinois. As noted below, HEC's claims do not arise out of the distribution of the Bout, therefore this argument is inapposite.

defendant.  *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 909 (N.D. Ill. 2003).  HEC has not made any such allegation here; therefore, the Court does not impute GoBox's contacts to Mosley.

HEC also argues that Mosley "has a long history both as a boxer and as a promoter of benefiting from Illinois' system of laws, infrastructure and business climate."  Doc. 37 at 6.  Specifically, HEC alleges that Mosley, through an entity called Pound For Pound Promotions, Inc., owns a 5% interest in a company called Golden Boy Promotions, Inc. ("Golden Boy"), and that Golden Boy organized 13 events in Illinois between 2005 and 2010.  HEC also alleges that as part of his relationship with Golden Boy, Mosley attended promotional activities "all over the U.S. and across the world."  Doc. 37 at 7.  With regard to the work of Golden Boy, the Court again declines to impute the actions of a corporation to Mosley where there is no alleged basis for piercing the corporate veil.  With regard to Mosley's alleged promotional activities, granting HEC the reasonable inference that Mosley attended at least some of the events in Illinois, the Court finds that given that the most recent event in Illinois occurred on December 12, 2009, *see* Doc. 37, Ex. 1-F, even if Mosley participated in that event, it is far too remote in time to support a conclusion that he has continuous or systemic business contacts in Illinois either at the present time or at the time the alleged cause of action in this case accrued.

HEC next argues that Mosley was licensed to box in Illinois between October 1, 1995 and October 1, 1997, and that during this time he fought at least once in Illinois, on April 9, 1997.  Again, this singular instance, nearly 20 years ago, is neither systemic nor continuous and does not support a finding of general personal jurisdiction.

Therefore, HEC fails to establish that the Court has general personal jurisdiction over Mosley.

9

B.  Specific Jurisdiction

HEC also argues that the Court has specific personal jurisdiction over Defendants. To establish specific personal jurisdiction, HEC must show that its claims against Defendants arise out of Defendants' constitutionally sufficient contacts with the state. *uBID*, 623 F.3d at 425. Defendants must have purposefully directed their activities at Illinois or purposefully availed themselves of the privilege of doing business in Illinois and the alleged injury must have arisen out of those forum-related actions. *See N. Grain Mktg., LLC*, 743 F.3d at 492. The Supreme Court has not elaborated what constitutes "arising out of," but several circuits have addressed the issue and are split on how strict the standard is. *Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012). Some circuits require that the forum related contacts must be the but-for cause of the plaintiff's injury, while other circuits have espoused a higher standard, requiring that the forum-related contacts be the but-for and proximate cause of the injury. *Id.* The Seventh Circuit has yet to definitively resolve the issue, but has indicated that "a mere 'but for' causal relationship is insufficient to establish the required nexus between a defendant's contacts and the underlying cause of action." *Id.* at 676–77 (citing *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1025 (7th Cir. 2009)). However, because HEC fails to satisfy even the lower, but-for standard, this Court need not determine where to draw the line in this case.

HEC brings two claims, one for tortious interference with a contract and one for tortious interference with prospective economic relations. The elements of tortious interference with a contract are (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v.*

*Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676, 131 Ill.2d 145, 137 Ill. Dec. 19 (1989). The elements of tortious interference with prospective economic relations are (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference. *Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004).

HEC states that Mosley's and GoBox's conduct satisfies the requirements of specific personal jurisdiction, but it is unclear upon what basis HEC is asserting this claim. HEC's failure to articulate the basis for his argument alone is sufficient to defeat his claim that the Court has specific personal jurisdiction over Defendants. *See Tamburo*, 601 F.3d at 700 (plaintiff has burden of making a prima facie case of personal jurisdiction). However, even doing its best job to determine which of Defendants' forum related activities may have given rise to HEC's claims, the Court comes up empty; therefore, so does HEC.

HEC alleges that GoBox and Mosley interfered with HEC's contract and prospective economic relationship with Ortuz by inviting Ortuz to participate in the Bout in California. HEC does not argue that any of the actions that lead to this interference occurred in Illinois or were directed at Illinois. Defendants state that at the time they invited Ortuz to participate in the Bout, he was living in California. Defendants state that they did not send any emails or otherwise contact Ortuz while he was in Illinois. HEC does not dispute these assertions, and at one point even appears to concede that its claims arose out of Ortuz's participation in the Bout, not any acts taken by Defendants in Illinois. Doc. 37 at 9 ("While Plaintiff agrees that the inclusion of the Ortuz Bout as part of the Event gave rise to this lawsuit. . ."). The Defendants made no

contacts with Illinois that in any way caused the alleged torts, and without some nexus between Defendants' forum related activities and the claims in question, the Court has no basis upon which to exercise specific personal jurisdiction. *Felland*, 682 F.3d at 676 (specific personal jurisdiction requires some nexus between the forum related conduct and the underlying cause of action).

Even applying the lower, but-for only standard, Defendants' contacts are insufficient to support specific personal jurisdiction. Defendants' only forum-related actions that have some relationship to the Bout—marketing and distribution of the Bout—are not but-for causes of HEC's injury. HEC's tortious interference claims are not predicated upon the distribution and marketing of the Bout. Therefore, the Court may not exercise specific personal jurisdiction over either Defendant regardless of the standard the Court applies to the contacts.

Because HEC has failed to meet its burden to establish either general or specific personal jurisdiction over either Defendant, the Court grants Defendants' motion to dismiss the complaint for lack for personal jurisdiction.

## II.     Protective Order

HEC seeks a declaration from the Court that Defendants waived their right to designate the deposition testimony of Mosley and Pisani confidential under the joint protective order in this case because Defendants did not designate the depositions as confidential on the record at the time the depositions were taken. HEC also seeks an order declaring that Defendants waived confidentiality with respect to the four contracts with PPV distributors and the CCTV report, which Defendants previously designated as AEO, because Defendants did not designate the depositions as confidential. Alternatively, HEC argues that the contracts and the CCTV report are not truly sensitive enough to warrant the AEO designation.

The party seeking to subject documents to a protective order bears the burden of establishing that such a designation is appropriate. *Culinary Foods, Inc.*, 151 F.R.D. at 300. The party seeking to protect documents under a protective order "must continue to show good cause for confidentiality when challenged." *In re: Bank One*, 222 F.R.D. at 586. The party must establish that the information is confidential information and that there is good cause to protect it. *Id.*

HEC first challenges the confidential designation of the depositions of Mosley and Pisani. Defendants make no argument as to the continued designation of the depositions as confidential. Therefore, Defendants do not carry their burden and the Court grants the motion with respect to the depositions.

HEC argues that if the Court grants the motion with respect to the depositions, then this results in a waiver of confidentiality with respect to the other documents because the other documents are discussed in the depositions. HEC states that the depositions include "testimony regarding the critical provisions of Defendant's four PPV distribution agreements and the CCTV report, render[ing] meaningless any need to further maintain confidentiality." Doc. 35 at 4. However, HEC does not provide any citation to the depositions and related citation to the contracts to provide the Court with an appropriate basis to evaluate the level of the confidential disclosure. It is not the Court's job to read through hundreds of pages of deposition testimony and contracts to determine where confidential information may have been disclosed. Therefore, while it may be possible that the depositions disclose so much confidential material as to render continued protection of the documents meaningless, the Court declines to do the legwork for HEC to make this determination.

This does not settle the inquiry, however. Because HEC has challenged the confidentiality of the contracts and CCTV report, Defendants must show that they are in fact confidential and that there is good cause to protect them. With respect to the PPV contracts, Defendants argue that the contracts contain confidential pricing and strategic information that is unique to these agreements and does not appear in typical PPV distributor contracts. This type of information is commonly designated as AEO. *See, e.g.*, *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1091 (N.D. Ill. 2015) (AEO designation appropriate for emails that reveal price proposals, pricing formulas, and product specifications); *Inter-Med Inc. v. ASI Med. Inc.*, No. 09-CV-383, 2010 WL 2679992, at *3 (E.D. Wis. July 1, 2010) (pricing and profit information is properly designated AEO where parties are competitors). Additionally, there is good cause to protect such information from disclosure to a competitor where the competitor could use that information to obtain a competitive advantage. *See Inter-Med*, 2010 WL 2679992, at *2. Here, HEC is a boxing promoter and access to the details of distributor contracts, which HEC admits are "fundamentally different" than typical PPV contracts, Doc. 37 at 8, may undermine Defendants' ability to negotiate similar terms in the future or to utilize their understanding of the unique terms of these contracts to negotiate similar deals on behalf of other promoters. Therefore, the information is appropriately designated AEO and there is good cause to protect it from disclosure to HEC or the public.

With respect to the CCTV report, the Court does not need to reach whether or not it satisfies the test for protectable information; Defendants have already disclosed this document publicly and have not made an effort to remedy that disclosure. In an unrelated litigation, *GoBox Promotions, Inc. v. Innovative Sports Management., Inc.*, Case No. 16-cv-6689 (C.D. Cal.), Defendants filed the CCTV report and one of the PPV contracts as exhibits to their complaint.

14

*Id.* Doc. 1-1, 1-8. Subsequently, Defendants filed a motion to seal with respect to the PPV contract and several other documents, but not the CCTV report. *Id.* Doc. 19. The court granted the motion, sealing the PPV contract. Doc. 27. Because Defendants have voluntarily disclosed the CCTV report to the public, it remains publicly available, and they have not made any effort to seal it in the California action, the Court finds that the CCTV report is not confidential and therefore not properly designated as AEO in this case.

Finally, HEC argues that because these documents were designated AEO, HEC's attorneys were not able to show the documents to HEC or Hitz to obtain their input for purposes of their response to the motion to dismiss. HEC does not explain what additional information Hitz or anyone else at HEC could have provided about the documents that would have been relevant to the Court's personal jurisdiction analysis. The Court finds that the designation of these documents as AEO did not harm HEC for purposes of the motion to dismiss.

For the foregoing reasons, the Court finds that the depositions of Mosley and Pisani as well as the CCTV report are not confidential documents and therefore orders that HEC not file these documents under seal. The Court finds that the PPV contracts are confidential and properly designated as AEO, therefore, the Court does not order the documents unsealed.

## CONCLUSION

For the foregoing reasons the Court grants Defendants' motion to dismiss for lack of personal jurisdiction [14] without prejudice.  And the Court grants in part and denies in part Plaintiff's motion for a declaration and order regarding the agreed confidentiality order [35].  The Court orders the CCTV report and the deposition transcripts unsealed and denies the motion to order the PPV contracts unsealed.

Dated: February 1, 2017

SARA L. ELLIS
United States District Judge